A. BLIZZARD AND J. H. GAUT v. WALTER CRAIG-
MILES *et al.*

DEED. *Mortgage. When.* A debtor, with two mortgages on his land to
different creditors, conveyed the land to the junior lien creditor,
taking from him a written agreement to reconvey upon the payment
of the entire lien debts in two years, and a lease of the land for those
years at an annual rent of exactly the interest called for by those
debts, the consideration recited in the absolute deed being about one-
half of the mortgage indebtedness at the expiration of the two years,
and a part of that debt, no credits being entered, receipts given, or
securities surrendered at the time. *Held,* that the transaction consti-
tuted a mortgage, but a mortgage for the security of the entire lien
debts.

FROM HAMILTON.

Appeal from the Chancery Court at Cleveland.
W. M. BRADFORD, Ch.

S. P. GAUT and J. N. AIKEN for complainants.

C. F. BATES for defendants.

COOPER, J., delivered the opinion of the court.

On January 5, 1875, the defendant James H. Hays
conveyed a part of his home farm to the defendant
W. H. Craigmiles in trust to secure his note of that
date to P. M. Craigmiles, at twelve months, for $3,000,
with interest at the rate of ten per cent. per annum.
P. M. Craigmiles afterwards died intestate, and defend-
ants John H. Craigmiles, Walter Craigmiles and T.
M. Osment became his personal representatives. On

August 29, 1876, James H. Hays conveyed the whole of his home place to the defendant T. M. Osment in trust to secure his note to the Cleveland Exchange and Deposit Bank, at twelve months, for $4,000, with interest at the rate of ten per cent. per annum after maturity. This deed provided that upon the failure of Hays to pay the note according to its terms, the trustee might sell the land for the payment thereof for cash, free from the equity of redemption. The note secured was afterwards transferred by the bank to the defendant Walter Craigmiles. On April 26, 1879, James H. Hays and T. M. Osment joined in a deed conveying the land in the last mentioned trust assignment to Walter Craigmiles in fee, with covenant of general warranty by Hays, for a recited consideration of five thousand dollars in hand paid. This conveyance was duly proved and registered. On the same day, a memorandum of agreement was drawn up, as a part of the transaction, and signed by Jas. H. Hays and Walter Craigmiles, reciting the trust assignment to Osment, the failure of Hays to pay the note secured, and that the trustee had given notice of the sale of the land on the 28th of that month. It further recited that Hays and Craigmiles had agreed upon an absolute sale of the land by Hays to Craigmiles at the price of $5,000, and that a deed had been executed accordingly on that day. It further recited the indebtedness of Hays to the estate of P. M. Craigmiles in the sum of $3,000 as above, and that this debt was a prior lien upon the land, and amounted then to over $4,000. It further recited:

that the consideration of $5,000, which Craigmiles was to pay Hays for the land, should be applied first to the satisfaction of Hays's indebtedness to the estate of P. M. Craigmiles, and then any surplus to be credited on Hays's debt due to him, leaving the balance "as a debt due from said Hays." The agreement proceeds thus: "It is distinctly understood that the sale this day made to Walter Craigmiles as aforesaid is absolute, and an indefeasible title is vested in him by the deed of this date; but it is further expressly agreed by and between the parties hereto, that if the said Hays shall, within two years from this date, pay to the said Walter Craigmiles the full sum now due from Hays to the estate of P. M. Craigmiles, deceased, as above mentioned, and shall also pay the full debt now due to said Walter Craigmiles as above stated, and shall also pay all the interest accrued and to accrue on both said debts from this time to the date of such payments at the rate of interest said debts now bear, so as to fully pay and satisfy both of said debts, then and in that event the said Walter covenants and agrees to re-convey said land to the said Hays in fee simple. Possession of said land is to be given said Craigmiles immediately, but the rents received by him therefrom are to be appropriated to the payment of the accruing interest on said debts in case Hays shall satisfy said debts within the two years above prescribed. Said Craigmiles further agrees not to push Hays for the balance of his said debt until after the expiration of said period of two years, and will take no steps to collect said balance within the

time aforesaid." On the same day, Walter Craigmiles leased the land to Hays in writing for the term of two years from that date at a yearly rental of $700, one-third payable just after the wheat harvest of the year, and the residue at the expiration of the year, and reserving a lien on the crops to secure the payment of the rent. Each of these two last instruments was attested by two witnesses, one of them being the clerk of the county court, but neither was proved or registered at the time, nor has the first of them ever been registered. No concealment was, however, made of the transaction, which soon became generally known.

The present bill was filed, September 30, 1880, by the complainants, as creditors of Jas. H. Hays, against Hays, Walter Craigmiles, W. H. Craigmiles, John H. Craigmiles and T. M. Osment, to set aside the instruments and transactions of the 26th of April, 1879, as fraudulent and void, to have the deeds of trust to the Craigmiles declared satisfied, and to subject the land conveyed to the satisfaction of complainants' debts. The chancellor held that the deeds of trust of the 5th of January, 1875, and the 29th of August, 1876, were cancelled by the parties on the 26th of April, 1879, and that the conveyance of that date by Hays to Walter Craigmiles of the land was a mortgage for only the consideration of $5,000 therein mentioned; and he ordered the land to be sold, and the proceeds applied first to the satisfaction of the balance of this debt after deducting rents received, and then to the payment of the debts of complainants. Both sides appealed.

The debts of Hays secured by the deeds of the 5th of January, 1875, and the 26th of August, 1876, were for borrowed money, and are not impeached in any way. They were undoubtedly just debts, and the conveyances made to secure them were entirely free from any imputation of fraud. The amount due to the estate of P. M. Craigmiles, upon the debt secured by the first of these trust assignments, was, on 26th of April, 1879, $4,292.22; and the amount due to Walter Craigmiles on the debt secured by the second deed was, on the same day, 4,663.60. The two debts together amounted to $8,955.82. There is no pretense that any part of this debt was fictitious, or that either party to the transaction of the 26th of April, 1879, intended its satisfaction except to the ex- tent of the consideration for the conveyance of that day, viz., $5,000. It has been repeatedly decided by this court that where an absolute deed is turned into a mortgage, it is nevertheless, in the absence of actual fraud, a security for the existing debt at the time of its execution: *Ruggles* v. *Williams*, 1 Head, 141; *Tur- beville* v. *Gibson*, 5 Heis., 565; *Hammonds* v. *Hopkins*, 3 Yer., 525, 531. In the case before us, the charges of fraud contained in the bill are not only unsustained by the evidence, but completely disproved. Whatever may be the legal effect of the contracts of the 26th of April, 1879—that is to say, whether they operated as an absolute sale of the land or only a mortgage— it is certain that the entire debt secured by the two trust assignments was recognized as valid and subsist- ing, the one party not intending, nor the other ex-

pecting a release of any portion of it, or a cancellation of any security held, except to the extent of the consideration recited in the absolute deed, and then only upon the supposition that it was a valid transaction. If, now, the absolute deed be treated as a mortgage, it will be a mortgage not merely to secure the consideration recited, but the residue of the unpaid indebtedness of Hays to Walter Craigmiles. He cannot be deprived of the legal title except by the payment of his entire debt. And if the transaction be set aside altogether, the trust assignments and the pre-existing indebtedness will remain in full force. His Honor, the chancellor, was therefore clearly in error, even upon the theory of his decree, in cutting down the prior lien of the Craigmiles to $5,000. They would have the prior right to satisfaction of their two notes, with ten per cent interest, out of the proceeds of the sale of the land.

The only point of real difficulty is whether the transaction of the 26th of April, 1879, was a sale of the land, with a condition for its re-purchase within the stipulated period, or operated merely to create a mortgage. The contract being in writing, in the form of an absolute deed, a defeasance, and a lease, the intention of the parties must be gathered from the face of the papers. The deed is absolute, but the consideration is a part of the pre-existing debt, not any new consideration. The contract to re-convey is conditioned upon the payment of the entire pre-existing debt, which would amount at the expiration of the time of indulgence to double the recited consid-

eration, and therefore shows that the parties valued the land at much more than the price recited. The lease is for an annual rent of $700, exactly ten per cent. on the principal of the pre-existing debt. The papers do not show the surrender of any of the evidences of the debt, nor any contemporaneous entry of a credit of the stipulated price on the securities held. These *indicia* are all those of a mortgage, not of an absolute sale, and demonstrate that the transaction, while in form a sale, was in substance a security to the grantee, not merely for his old debt, but for the debt assumed by him due to the prior mortgagee: *Ehert* v. *Chapman*, 8 Baxt., 27; *Hickman* v. *Cantrell*, 9 Yerg., 180.

The chancellor's decree will be reversed, and a decree rendered here in accordance with this opinion. The complainants will be entitled upon their debts to any surplus arising from the sale of the land after paying the costs of the entire cause, and the debt of Hays secured by his trust assignments and the deed of the 26th of April, 1879, as herein construed, subject to a credit for money collected as rents under the contract of the 26th of April, 1879. Walter Craigmiles will pay all the costs in the first instance.